**David P. SUGARMAN et al.**

v.

**Robert LEWIS et al.**

**No. 82–85–Appeal.**

Supreme Court of Rhode Island.

Feb. 27, 1985.

Bruce A. Wolpert, Providence, for plaintiffs.

Donald M. Gregory II, Wickford, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

The plaintiffs brought this petition for declaratory judgment pursuant to the provisions of our Uniform Declaratory Judgments Act, seeking a declaration that their property was not within the town's subdivision ordinance. They also sought a declaration that the Exeter Planning Commission exceeded its statutory authority by approving an amendment to the subdivision ordinance on August 11, 1976.

After a hearing before a justice of the Superior Court sitting without a jury, a decision was rendered and judgment was entered denying relief and declaring that (1) the division of land qualified as a subdivision within the meaning of the statute and was therefore subject to the jurisdiction of the Exeter Planning Board and (2) that plaintiffs have no standing to question the enactment of the subdivision-ordinance amendment because they had not exhausted their administrative remedies. In the alternative the trial justice held that the town had the statutory authority to enact the amendment. The plaintiffs appeal.

The facts in this case are not in dispute. The plaintiffs are the owners of several substantial parcels of real estate in the town of Exeter. In February 1976 plaintiffs entered into certain sale agreements for a portion of the property. These agreements were conditioned upon the ability of the prospective purchaser to obtain building permits for single-family dwellings from the town of Exeter. Each of the parcels was divided for the purpose of sale into lots that were connected to Yawgoo Valley Road by a strip of land varying in width from ten to twenty feet.

The plaintiffs were "informally" told by the town that the plat would constitute an illegal subdivision and they would not be able to secure the necessary permits. The plaintiffs at this point petitioned the Superior Court for a declaratory judgment, which was heard and decided adversely to plaintiffs.

The issues presented are (1) whether the planning board has jurisdiction over the lots in question and (2) whether plaintiffs have standing to challenge an amendment to the town's subdivision ordinance.

I

Addressing the first issue, plaintiffs contend that the planning board does not have jurisdiction over the proposed plat because each of the lots is over one acre in size and each has some access to an existing public road. Consequently, they argue that the lots do not fall within the statutory definition of the term "subdivision" and therefore do not qualify as a subdivision under the ordinance. The plaintiffs claim that the planning board could exercise jurisdiction over the sale of land only if the transaction were to involve a subdivision of property.

However, defendants contend that the property in question does constitute a subdivision within the meaning of the statute requiring provision for a street notwithstanding the fact that access to a street is provided. To do otherwise would result in danger to the safety and welfare of the public, they claim.

■ It is well settled in this jurisdiction that a planning board is vested with the authority over the sale of real estate if the sale constitutes a subdivision within the definition of G.L.1956 (1970 Reenactment) chapter 23 of title 45. *Weaver v. United Congregational Church*, 120 R.I. 419, 388 A.2d 11 (1978); *Taylor v. Marshall*, 119 R.I. 171, 376 A.2d 712 (1977); *see also Slawson v. Zoning Board of Review of Barrington*, 100 R.I. 485, 217 A.2d 92 (1966). In 1977, at the time the action was brought, § 45-23-1 defined the term "subdivision" in relevant part as follows:

"The word 'subdivision,' shall mean the division of a lot, tract, or parcel of land into two (2) or more lots, sites or other divisions of land in such a manner as to require provision for a street, for the

purpose, whether immediate or future, of sale or building development.

"It also means the division of a lot, tract or parcel of land into three (3) or more lots, sites or other divisions of land of one (1) acre or less in area for such purpose. It also includes resubdivision and, when appropriate to the context, shall relate to the process of subdividing or to the land subdivided.

"The word 'street' includes street, avenue, highway, boulevard, parkway, road, lane, alley and other ways."[1]

▪ In construing a statute, this court is guided by the oft-repeated canons of statutory construction. When language of a statute is clear and unambiguous, there is nothing left for interpretation and the statute must be read literally. *Citizens for Preservation of Waterman Lake v. Davis*, R.I., 420 A.2d 53, 57 (1980); *North Providence School Committee v. Rhode Island State Labor Relations Board*, 122 R.I. 415, 418, 408 A.2d 928, 929 (1979). An examination of the statute at issue here indicates that it is clear and unambiguous and only subjects the sale of real estate to the jurisdiction of the planning board "when access to the newly created parcels would require the construction of a street." *Town of Coventry v. Glickman*, R.I., 429 A.2d 440, 443 (1981); *Taylor v. Marshall*, 119 R.I. at 177–78, 376 A.2d at 715; *see also Slawson v. Zoning Board of Review of Barrington*, 100 R.I. at 492, 217 A.2d at 96. Standing alone, this interpretation would suggest that the proposed plat does not constitute a subdivision within the meaning of § 45–23–1 because the subject lots did have access to a public road.

▪ A statute should not be interpreted literally, however, even though clear and unambiguous, when such a construction will lead to a result at odds with the legislative intent. *Carrillo v. Rohrer*, R.I., 448 A.2d 1282, 1284 (1982); *Kingsley v. Miller*, 120 R.I. 372, 376, 388 A.2d 357, 360 (1978).

In an attempt to accomplish the purpose for which such acts are passed, we have said that "we will not allow ourselves to be blindly enslaved to the literal reading of statutes when to do so would defeat or frustrate the evident intendment of the legislature." *Town of Scituate v. O'Rourke*, 103 R.I. 499, 507, 239 A.2d 176, 181 (1968); *see also Warren Education Association v. Lapan*, 103 R.I. 163, 173, 235 A.2d 866, 872 (1967); *Cabral v. Hall*, 102 R.I. 320, 325, 230 A.2d 250, 252 (1967).

The Legislature has explicitly stated that the subdivision rules at issue here were intended to empower local governments to promote "the general health, safety, morals or general welfare" of the community. Section 45–23–2. This objective is articulated more specifically in § 45–23–3:

"Purpose of rules.—Such rules and regulations shall be designed to make adequate provisions for traffic; to lessen traffic accidents; to promote safety from fire and other dangers; to provide adequate light and air; to prevent overcrowding of land; to prevent the development of unsanitary areas for housing purposes; to secure a well-articulated street and highway system; to promote a co-ordinated development of unbuilt areas; to secure an appropriate allotment of land area in new developments for all the requirements of community life; to conserve natural beauty and other natural resources; to conform to any master plan which may have been adopted; to furnish guidance for the wise and efficient expenditure of funds for public works; and to facilitate the adequate, efficient and economic provision of transportation, water supply, sewerage, recreation and other public utilities and requisites."

Furthermore, the Legislature reinforced this broad grant of authority to the cities and towns by mandating in § 45–23–21 that the provisions of the chapter be construed

---

1. On May 5, 1979, the Rhode Island General Assembly amended this definition, eliminating any mention of the need to construct a new street, while explicitly incorporating local area and frontage requirements. *See* P.L.1979 ch. 223, § 1.

most favorably to the local planning commission so as to give it "the fullest and most complete powers possible concerning the matters provided for herein."

As the court noted in *Town of Coventry v. Glickman,* R.I., 429 A.2d at 444:

"Subdivision legislation attempts to control the development of vacant land by requiring that streets within the development shall be properly constructed and logically related to the existing street system. A developer may be required to provide the basic services essential to modern living such as the construction of water, sewer, and other utilities, mains, pipes, or connections."

When we read the subdivision act as a whole, we view the clause "in such a manner as to require provision for a street" as a mechanism to alert the municipality when the proposed development is to be of such dimension as to have a substantial impact on municipal services and the general welfare of the community. In this way, the municipality can take whatever steps are necessary to ensure that the general health and welfare of its citizens and the development of the proposed plat are consonant. The trial justice in the instant case found as a fact that the plan prepared by plaintiffs was an attempt to circumvent the subdivision requirement and that it was obvious from the plat maps that in order to protect the general health, welfare, and safety of the community, a street was required.

■ A trial justice's findings are entitled to great weight and will not be disturbed unless it is shown that he misconceived or overlooked material evidence or is clearly wrong. *Mesolella v. City of Providence,* R.I., 439 A.2d 1370, 1375 (1982); *Taylor v. Marshall,* 119 R.I. at 178, 376 A.2d at 716; *Raheb v. Lemenski,* 115 R.I. 576, 579, 350 A.2d 397, 399 (1976). We find that plaintiffs have failed to show that the trial justice overlooked or misconceived material evidence or was clearly wrong.

■ An examination of the plat map suggests that the provisions for the access roads constitute a potential traffic and fire hazard. It is apparent that a better system is required to benefit the general community and the lot owners themselves. We therefore conclude that the property comes within the provisions of the subdivision's regulations and are subject to the planning board's jurisdiction.

II

The second issue presented is whether plaintiffs have standing to contest the planning board's promulgation of an amendment to the town's subdivision ordinance modifying the definition of subdivision to include the division of a tract into two or more lots "with less than one hundred fifty (150) foot frontage on an adopted town or state highway."

The trial justice held that plaintiffs did not have standing to object to the modification of the subdivision ordinance because they failed to pursue the procedures set forth in the subdivision regulations and therefore did not exhaust their administrative remedies. In the alternative, the trial justice found that the planning board had not exceeded its delegated authority in enacting the amendment.

In light of our resolution of this case, it is not necessary for us to address this issue. We have already found that the planning board has jurisdiction over the subject plat notwithstanding the enactment of the amendment to the town's subdivision ordinance. It would consequently serve no useful purpose for us to rule on this issue at this time.

Therefore, the plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.