DECISION
This is an appeal from a decision of the Zoning Board of Review of the City of Warwick (hereinafter referred to as Board). The petitioner, Shawomet Land Company (hereinafter referred to as Shawomet), appeals the Board's denial of its application for a dimensional variance for relief from frontage requirements. Jurisdiction of this Court is pursuant to R.I.G.L. 1956 §45-24-69.
FACTS AND TRAVEL
Shawomet is the owner of the subject property, Lots 53, 54, and 55 on Assessor's Plat 289. These lots are located on Rathburn Street[1] in the City of Warwick in an area zoned A-7. Shawomet seeks to build one single family dwelling on the subject lots and is in compliance with all applicable zoning requirements except frontage. Under the applicable zoning ordinances, the lots lack sufficient frontage on a public road.[2] However, access to the lots is possible by means of a fourteen foot easement that runs across an adjacent piece of property (Lot 56 on Assessor's Plat 289) and leads to Tennyson Street (a nearby public road). Shawomet believed this easement could satisfy the frontage requirement of the ordinance and consequently sought a variance therefrom. In that regard, Shawomet filed an application with the Zoning Board on December 18, 1993, seeking relief under §§ 904.2 (A)-(C) and 904.3 of the City of Warwick's Zoning Ordinances.
A public hearing was held before the Board on October 18, 1994. At the hearing, the Warwick Planning Board first offered its opinion on the proposed application. It was the Planning Board's recommendation that the petition be denied. (Record at 12). As grounds for denial, the Planning Board cited concerns over public safety due to the possible difficulty firefighting apparatus would have in accessing the rear of the structure through the narrow fourteen foot easement. (Record at 12). The Planning Board was also concerned with Shawomet's acquisition of property it knew to be unbuildable. (Record at 12). Finally the Planning Board expressed concern over the history surrounding the land transfers relating to these four lots and the appearance of impropriety arising from Shawomet's failure to mention the easement now in question when it sought an amendment to the original building permit for Lot 56.[3] (Record at 12).
Testimony was also received on behalf of the petitioner from John E. Shekarchi, president of Shawomet Land Company; Richard Johnston, president of Johnston Corporation;[4] and Francis J. McCabe, a recognized real estate expert. Shekarchi's testimony concerned matters of general interest including a representation that fourteen feet was adequate clearance for fire apparatus. (Record at 22). McCabe offered uncontroverted testimony that the proposed construction would be in harmony with the character of the neighborhood (Record at 16), that the denial of the variance would amount to more than a mere inconvenience to Shawomet, and would deprive the petitioner of all beneficial use of the land (Record at 12), and that construction of the new home would in fact increase the value of the surrounding homes. (Record at 16).
Finally, testimony in opposition to Shawomet's application was offered by several abutting property owners. These individuals offered general opposition to the proposal. They voiced objection to the noise of construction (Record at 19-20), concerns over fire safety (Record at 20), and sewage and drainage difficulties. (Record at 20-21).
After considering all the evidence presented, the Board filed a decision on February 22, 1995, denying the petitioner's request. In its decision, the Board made specific findings of facts and concluded therefrom that:
 A. The granting of this request would not be compatible with the neighborhood and area in general because there are other single family dwellings in the neighborhood which all contain frontage on a public street and none of which must be accessed through an abutting parcel of land.
 B. The granting of this request would be detrimental and injurious to the use, value, and enjoyment of the neighboring properties because a company with the same principals had previously requested and received permission from the Zoning Board to construct a single family dwelling on the abutting undersized Assessor's Lot 56 and did, in fact, construct a dwelling thereon. The petitioner did not reference the proposed easement. The petitioner should have been aware that the subject property had frontage on a paper street and that an easement would be required across Assessor's Lot 56.
 C. The granting of this request would be detrimental to the public health, safety, and welfare because the proposed easement fails to meet the minimum fire protection standards due to the insufficient width of the proposed easement, which under Section 604.6 should be 24 feet wide versus the fourteen feet provided. The petitioner did not request relief under Section 604.6 of the Warwick Zoning Ordinances. The proposed easement will also consume the required side yard of the single family house on Assessor's Lot 56.
 D. The subject parcels have frontage on a paper street which should be developed in order to provide access that will satisfy public safety requirements. (Record at 25-26).
From this determination, Shawomet filed the instant timely appeal on March 9, 1995, pursuant to R.I.G.L. 1956 § 45-24-69.
Because the respondent, Zoning Board of Review of the City of Warwick, by and through counsel, failed on numerous occasions to respond to requests for a memorandum in opposition and in fact did not file a brief by a date three and one-half months after the date originally stipulated to for filing by the parties, this Court entered an order prohibiting the Board from filing a brief in support of its position. (Order of Silverstein, J. — 10/31/96). Therefore, this Court will decide this matter without a brief on behalf of the City of Warwick and its citizens.[5]
STANDARD OF REVIEW
This Court's review of a zoning board decision is controlled by R.I.G.L. 1956 § 45-24-69 (D), which provides:
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. R.I.G.L. 1956 § 45-24-69
(D).
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturalist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I.Conflict of Interests Commission, 509 A.2d 453, 458 (R.I. 1986).
THE ZONING BOARD'S DECISION
Shawomet proffers three arguments in support of its position that the Board's decision be reversed. Namely, petitioner suggests that: (1) the Board's decision is not supported by any competent evidence on the record and is clearly erroneous in view of the information contained therein, (2) the Board's denial was in excess of the authority granted to it under city ordinances, and (3) the Board applied an incorrect standard when reviewing Shawomet's variance application.
From the evidence before this Court, it appears that the Board relied upon zoning ordinances enacted under the Zoning Enabling Act of 1991. These ordinances became effective on December 31, 1994. On the other hand, it seems that Shawomet places its reliance on the ordinances enacted and effective prior to the 1991 Act. Such ordinances remained in effect until December 31, 1994. Clearly, the ordinances in effect on the date of submission of an application for a zoning variance control the Board's review. As the subject application was submitted on December 18, 1993, the pre-1991 Act ordinances are applicable to the instant action.
The Board therefore committed an error of law insofar as its denial of Shawomet's request for a variance rested upon the post-1991 version of § 604.6 of the City of Warwick's Zoning Ordinances (Public Safety). Section 604.6 of the zoning ordinance does require twenty-four feet of clearance for the ingress and egress of emergency vehicles. However, the pre-1991 version of § 604.6 specifically restricts its applicability to nonresidential uses. Because the pre-1991 ordinance controls in this situation, the Board's reliance upon this ordinance provision in a residential context is in excess of its authority under the law.
With respect to the arguments advanced by Shawomet on appeal, this Court's review of an application for dimensional relief is governed by the mere inconvenience standard articulated in Viti.See Viti v. Zoning Board of Review of the City of Providence,92 R.I. 59, 166 A.2d 211 (1960).[6] A review of the record indicates that the Board did not apply the Viti standard to the variance application now at issue. However, of greater importance to this review is Shawomet's failure to apply for its variance under the proper provision of the City of Warwick's Zoning Ordinances. Shawomet's application for a variance should have been brought under § 304.3 (General Provisions — Required Yards), rather than §§ 904.2 (A)-(C) and 904.3. Pursuant to § 304.3 of the City of Warwick's Zoning Ordinances:
 No part of a yard, parking space or other open space required for any building or use for the purpose of complying with the provisions of this ordinance shall be included as part of a yard, parking space or other open space required under this ordinance for another use or building except as provided in subsection 701.5.[7]
What the petitioner now seeks to accomplish through its variance application clearly violates this provision of the city code. Specifically, Shawomet wishes to use an easement across the side yard of Lot 56 to satisfy the frontage requirements for construction on Lots 53, 54, and 55. However, the side yard of Lot 56 has already been used to satisfy the side yard setback requirements for construction of the existing home thereupon.[8] As the language of the ordinance indicates, this land cannot now be used to comply with the frontage requirements of Lots 53, 54, and 55. Such a double counting of open space in order to satisfy the separate and distinct zoning requirement associated with independent construction proposal clearly runs contrary to the terms of § 304.3. See Church of State Josephof Geneva v. Providence Zoning Board of Review, et al., C.A. 92-5690, January 12, 1995, Needham, J. (citing Appeal of John J.Bateman Associates, 396 A.2d 72 (Pa. 1979) (prohibiting the double counting of land otherwise meant to satisfy two distinct area requirements)).
While the Board never directly addressed the applicability of § 304.3 to the instant application, it did make certain findings of fact concerning the apparent misuse of Lot 56's side yard. Specifically, the Zoning Board found that the proposed easement would consume the required side yard for the single family house on Lot 56. (Record at 25). The inadequacy of the side yard setback was also noted by the Planning Board and cited by that body in support of its recommendation that the application be denied. (Record at 12). Clearly, upon review of the record in this case and the decision rendered by the Board, support is found for the conclusion that the proposed use of Lot 56's side yard violates the clear language of § 304.3 of the city ordinances. See Richards v. Zoning board of Review of theCity of Providence, 100 R.I. 212, 220, 213 A.2d 814, 818 (1965) (a decision of the zoning board will be sustained where the reviewing court can ascertain from the record the reason for the board's decision and when that opinion is supported by competent evidence on the record).
For the foregoing reasons, this Court finds that the Board's decision to reject Shawomet's application was supported by reliable, probative, and substantial evidence on the whole record and did not prejudice the substantial rights of the petitioner. Accordingly, the decision of the Board is affirmed.
Counsel for the prevailing party shall prepare an appropriate judgment for entry in accordance with this decision.
[1] Rathburn Street is a street in name only. Testimony before the Board indicated that the street was closed by the Department of Environmental Management (DEM) because it violated certain wetland regulations. (See Record at 14).
[2] Rathburn Street is a paper street, and the lots have no frontage on any other public road.
[3] From the testimony before the Board and the evidence presented thereto, this Court cobbles together the following facts with respect to the purchases and transfers by Shawomet Land Company of the properties now at issue. Either Shawomet or Johnston Corporation was the owner of Lot 56 at all times relevant herein. On May 29, 1993, Shawomet purchased Lot 55. On June 15, 1993, Shawomet sought and received a dimensional variance permitting construction on Lot 56 (Lot 56 was undersized with an area of only 5471 square feet). (Record at 12). In August of 1993, the petitioner reappeared before the Board and sought permission to revise its plans for the home on Lot 56 so as to reduce the width of the house by six feet to fourteen feet (the width of the easement now in question). (Record at 12). Finally, on May 25, 1994, Shawomet purchased Lots 53 and 54. (Record at 12).
[4] Johnston Corporation will be the builder of the proposed dwelling. It was also the builder of the home on Lot 56. (Record at 13).
[5] The Bar generally, and more especially counsel who advise and/or represent zoning boards, are reminded of the adversarial nature of the judicial process. The Court derives no assistance from counsel who decline to file memoranda or briefs in matters of this nature on behalf of defendant zoning board.
[6] A frontage variance has been characterized as dimensional relief. When seeking dimensional relief, a petitioner need only show that denial of the variance would impose more than a mere inconvenience upon the petitioner. See Slawson v. Zoning Board ofBarrington, 100 R.I. 485, 489, 217 A.2d 92, 95 (1966).
[7] Section 701.5 refers to shared parking spaces, a discussion of which is not relevant to the matters presented herein.
[8] In an A-7 zone, an eight foot side yard setback is required under the applicable dimensional regulations. Appendix A, Table 2, City of Warwick Code of Zoning Ordinances.